The last case today, number 241931, Jeremiah Nicholls, et al, versus Veolia Water Contract Operations USA, Inc. Will counsel for appellants please come up and introduce yourself on the record to begin. Good morning, your honors. Terrence Calls for the appellants, Jeremiah Nicholls, et al. I would ask that I can reserve one minute for rebuttal. You may. If it may please the court, I think the best place to start with this case are the facts that were undisputed before the district court. What was undisputed was that the appellants in this case are all employees of Veolia. What was undisputed is that Veolia has a service contract with the Springfield Water and Sewer Commission to operate, maintain, and improve the commission's infrastructure, which includes this Bondi Island facility where there's a wastewater treatment plant and various pumps and other operations throughout the system. It's undisputed that this is a public works program. In fact, water and sewer is, one could say, almost like the archetype of a public works. It's undisputed that these employees performed work for Veolia, the appellee, that falls under the definition of construction under the Prevailing Wage Act, which is to say, section 27D of that act says that alterations and additions are under the definition of construction and that courts and the administrative agency charged with interpreting that law have found that repair and replacement work of the kind that the appellants do is construction. And that repair and replacement work varies throughout the year, but one of the huge things is rebuilding these bridges that are at the wastewater facility that are integral to the treatment plant's operations, and they have to be replaced, I think it's once every four years. They replace pipes. They manufacture metal for repairs. So at its base, what you have are facts that show that, again, we will get to the special act in a minute, but that just on those facts, if you compare the work that the appellants do with the Prevailing Wage Act and the decisions that have interpreted that they perform construction work. Counsel, I know in your briefs you say it's undisputed that if the definition of construction under the PWA applies here, that the work that they did fell within that. It was less clear to me from their briefing that they have conceded that. Where would I find that concession? I believe it's in the statement of facts. In other words, the work that I have addressed in our briefs. Whose statement of facts? Well, it's in the response in the appellee's statements of facts. I think that the work that I set forth that these appellants had performed was admitted. I think there are some gray areas, and presumably those would be worked out in the lower court. That is, as you can probably tell from the decisions, there's gray areas as to when repair and replacement falls under construction and when it doesn't. But certainly, the large scale work that they do, I don't think there's any dispute over that. So the only thing that's between these appellants. So your position is that some of the work that your clients perform would fall under the definition of construction, and you're not quibbling that some of it doesn't? I am not quibbling that some of it doesn't. They do a lot of maintenance work that is like checking valve levels, checking meters, things like that. The courts and the agency charged with interpreting the prevailing wage laws found that that work doesn't fall under it. So there is some work that they do that falls under it, some work that would not fall under it. And really, the only thing between that comparing the work they do and the work they do that falls under the Prevailing Wage Act is the interpretation of this special act. How much money is at stake here? At this point, I think it's hundreds of thousands of dollars. Because the way that it... That's not very precise. Yeah, well, I have not come up with an actual figure at this point. I assume there is a sum which perhaps continues over the years, and then you add interest to it. Is that what we're talking about? Trouble damages. The Prevailing Wage Act provides that under, I think it's Section 27, that you are entitled to trouble damages, and you're allowed to collect for the costs of litigation. Is that a mandatory trouble damages or a discretionary? Mandatory. And you still can't give me any better estimate than a few hundred thousand? I know it's in the hundreds of thousands of dollars. I can't give you a better estimate of that. Is it closer to a million, or closer to half a million, or you don't know? I am not sure, Your Honour. I haven't done the specific calculations recently. This case has been going on since, I think, 2021. So, you know, the damages have been multiplying. And so, I know the last time when I looked at it going, when we were going for a summary judgment, I think it was somewhere around 100. I calculated it somewhere around 120,000. Okay. So, then, you know, the court then decided. This special act, which is for Springfield, are there parallel acts like that for other water districts? I believe there are. I believe there are, but I don't know the specific language in the enabling statutes for those other districts. But I believe there are other water. And there's no case law arising similar to this from any of these other districts that you're aware of? Not that I'm aware of, no. So, this, in a sense, would be a, we're ruling would be a ruling of first impression, correct? For this, for the Springfield Water and Sewer Commission, yes. And I don't think there are any other decisions for any other commissions in Massachusetts that are governed by water and sewer. Do you know if there are any similar controversies surrounding this language bubbling anyplace else in the system right now? I'm not. Not familiar. I'm not aware of this same issue coming up in other court cases. Similar question, but outside of the state. Did, if you know, did Massachusetts come up with a special act, borrowing it from some other jurisdiction that may have interpreted it, or you're not aware? I don't, there's nothing in the legislative history. But obviously, you know, the legislative history can be. The legislative history here, it's very scant.  Simply the act was passed and that was it.  And no statements from the floor or anything else. Not that I'm aware of, no. Not that I've been able to find. No. So, you'd go to the special act, 1997, chapter 155. And specifically, section six is what the lower court interpreted in terms of trying to decide whether the prevailing wage act applied to the work that the appellants are doing. And it's specifically the first sentence. And it specifically, in that first section of section six, specifically says that the provisions of any general or special law or regulation relating to the advertising, bidding, or award of contracts to the procurement of services or to the construction and design of improvements, and then except for the provisions of section 26 to 278, inclusive of chapter 149 of the general laws, the prevailing wage act, shall not be applicable to any selected offeror, which is awarded a contract pursuant to this act. The selected offeror awarded a contract is the appellee, the ole. This section specifically says that for, and this is our argument, that for construction and design of improvements, the prevailing wage act applies. Now, the question is, what is the meaning of construction in section six? Section six is put into law in 1997. The prevailing wage act, which includes the definition of alterations and additions being a part of the construction, which includes these agency decisions, finding that repair and replacement work falls under additions and alterations, has been in existence since 1935. So when this special act is created in 1997, A, it's clear that the prevailing wage law is the law of the Commonwealth, and B, that the definition of construction has been clearly decided by both the language in the prevailing wage act and court and agency interpretations about it. So my argument is simply that the court, in finding that the appellant's work, although construction work doesn't fall under the special act, is essentially giving a definition to construction that completely contradicts the prevailing wage act. And there is nothing in the language of the special act that suggests that construction should be given a different definition. So that's what you're saying, that the act should have affirmatively said construction for purposes of the act, and maybe give another, as we see something in the US code for purposes of the act, it's x, y, or z. If it doesn't, then we go to the people in the unit. Yes, and specifically, it's right before it carves out construction and design of improvements. Right after that, it says, accept the prevailing wage law. So they are saying that construction and design of improvements, the prevailing wage law applies. It seems to me to really stretch the imagination to suggest that in that kind of structure of statutory construction, that there would be a different definition of construction. So your opponents rely on several parts of the district court opinion, including its statement, which it didn't explain, that to read construction as anything other than the dictionary definition would be inconsistent with the purposes of the special act. What did that mean? I don't understand what the inconsistency would be. Yeah, I don't know. You're saying, what would be the inconsistency between interpreting construction in conjunction with a prevailing wage act and the rest? I don't. I can't give you clarity on that. Because from my perspective, the only thing that's different is there's a special procurement scheme that they point out. But within that procurement scheme under the special act is the Springfield Water Sewer Commission has to get the prevailing wage rates from the agency charged with issuing those rates, which they did in this case. Which they did. Inherent in your argument is the legal doctrine of impare materia.  You're saying, look, the prevailing wage act has to do with public works projects of this sort. So does the special act. Therefore, we ought to assume that the legislature in the special act intended the same construction as had been adopted under the prevailing wage act. Your opponent says, well, it's true in only the grossest terms that both acts apply to public construction works. But here, the legislature had something else in mind. It's a special act. It only applies to certain type of work. What's your reply to that? Look at the language in section six in that sentence. In section six of the special act that says, construction and design of improvements have to abide by the prevailing wage law. How can you suddenly say that we should take some definition of construction that's different than the prevailing wage law when they've just used the term construction and they say it's going to apply to the prevailing wage act? Thank you. You have one minute for rebuttal. Thank you. Let's hear then from Council Melnick. Thank you, Your Honor. Steven Melnick, counsel for Veolia. And with me is Shane Miller. It doesn't seem that there's any dispute that special act controls over the general act. So special act here controls over the prevailing wage act. That doesn't mean the definition in a general act is not adopted into a special act. Correct, Your Honor. Can I start with, your brother said there is really no dispute that if the term construction is the same in both acts, that some of the work for which they are suing falls within the term construction. Do you agree with that? We disagree with that. And I think below, I don't think we agreed with that. But at the end of the day, what we're focused on here is the issue of statutory construction as to whether or not the prevailing wage act applies at all. If the prevailing wage act doesn't apply, it doesn't matter whether it's construction under that act or not. Yes, I understand. That's where you state your major argument. But if we disagree with your major argument, then we have the issue of, look, is there anything really at issue here? And you're saying we would fight even on the issue of whether this work would be construction work under the PWA. Yes, Your Honor. Yes, Your Honor. I believe that would be on remand that we'd fight over that. All of it? I'm sorry? All of it? You're not conceding that any of it would fall under the definition of construction? Correct, Your Honor. Let me ask you a similar question to that which I asked for the counsel. As far as you know, is there any precedent could be superior court, right? Interpreting the special statute or no? To my knowledge, no, Your Honor. And do you know if there's, from any other water district, any litigation or anything? Or same answer as wrote the counsel? Same answer, Your Honor. Even across the country, I'm not aware of any. I don't know if the language is unique, or it just hasn't bubbled up. Are there any other water district agreements that have this language in it? I am not aware one way or another, Your Honor. Would you be aware? Does your law firm specialize in this sort of work? We perform this sort of work. We looked, and I don't believe we found anything else. All right. Thank you. You did look. Yes, ma'am. So what we have here is these five words, construction and design of improvements. And what does it mean? And we have to start both the SJC's. What would be the public policy reason for treating the work done in Springfield different from the way public work is considered under the Public Works Act? Your Honor, frankly, I don't know what motivated the legislature in 1997 to pass this particular special act. There is no legislative history. We can look at the act and see what it means, and what it does, and what the act means, the special act. Doesn't it make for a stronger case, then, that we look to see what was in the background when it was passed, particularly if there is no comment suggesting why we should view it in a context different from the public works letters and everything else that was going on around it? If I may, Your Honor, the point of the special act is to exempt the Springfield Water and Sewer Commission from all of these requirements that existed in 1997 for procuring contracts. That is the point of the statute, is to exempt the commission from things like the Prevailing Wage Act. Except that it has the language about the exception to the exceptions. There is an exception to an exception. Correct, Your Honor. And that's why you're here. That's why we're here. And the exception to the exception is narrow. It's the construction and design of improvements. And so what does that word mean? First, we have to start with the plain meaning, the plain language of the statute, which is both what this court and the SJC have held. Is there any ambiguity in the word construction? And I posit no, there is no ambiguity in the word construction. We can look up the definition of the word construction. Provides a clear and unambiguous definition. The only reason to go searching for extrinsic meaning in other statutes is if there's ambiguity. The appellants have not pointed to any ambiguity in this language. They take the leap, oh, we should go searching for language that helps us. That may be the canon of construction you would like to have applied. But usually when there is a reference to a prior statute and it's in the same general area, construction of public works projects, such as water districts, usually the rule of construction is the earlier definition of the term carries over. We disagree that these two statutes are imperimateria,  OK, why? The very purpose of the special act is to exempt the Springfield Water and Sewer Commission from these types of laws. To exempt them. There's a list of laws right at the beginning. Here's a list of laws that do not apply to the Springfield Water and Sewer Commission. In section six, the whole point of section six is to say. So that's actually your answer to Judge Thompson's first question. You may not understand why they wanted to exempt the Springfield Water District, but the whole purpose of the special act is to exempt it with just a narrow exception to that exemption. Yes, Your Honor. And we can't say, well, that's a public work, that's a public work, let's all slap them together. Is it that Springfield is especially poor? I would be speculating, Your Honor. I do not know what the rationale was. I know it's a large district. It covers multiple, several communities that may factor into it as well. But again, I'd be purely speculating. So again, the imperimateria, either you have to use identical language or show something that we want to pull in this other language. We cited to the Commonwealth v. Smith case, which is an imperimateria case from the SJC. That case looked at the incest statute versus the rape statute and said sexual intercourse, we're not going to consider that imperimateria. I think those two statutes are far, far, far closer. But still, it's a very different, talk about those criminal statutes to this, it's very different, correct? It is very different, Your Honor. But I don't know if my brother or the appellants have pointed to any cases that you may look at and say, oh, here's a case that's spoken. But one of the things we have, and I ask Brother Counsel, is this is really, it's a case of really first, first, first impression, which we have no legislative history, we have no prior cases, nothing to help from any other state. We're probably in a federal scenario. You would agree that it's really first impression? Yes, Your Honor, this is first impression, though. We're applying the standard statutory interpretation canons that are familiar with, that the court is, of course, very familiar with. I'd also note that appellant's argument is circular. They say, well, if the definition section applies, then the definition section applies. You have to go look and find the definition section, apply it back to construction to find out that the definition section applies. So it doesn't freestand on itself. We have to bootstrap the argument in. In any event, the Special Act does not just say construction, that the Prevailing Wage Act applies to construction, period. It says the construction and design of improvements. I'll note that the Prevailing Wage Act does not say the construction and design of improvements. It just says construction. These are two different terms. There's no reason to assume that just because there's a coincidental use of a word that has a very plain meaning, that the legislature was thinking, aha, we're going to import this word from a whole different area and bring it in here. In any event, the operative word here is improvements. Construction and design modify improvements. So the question is, improvements. Are they performing improvements? And there is nothing in the record that suggests that the appellants performed improvements. To the contrary, they all admit that they did not perform any kind of improvement work. And if you look at the rest of Section 6, it goes on to explain what improvements mean. They're not writing in a, there is discussion about what capital improvements. They go on to explain is capital improvements. And there's a very thorough procurement scheme for capital improvements. The appellants admit they never performed any kind of capital improvements work. So even if we somehow assume that the word construction should be pulled in, they didn't perform improvements. So it doesn't matter. Improvements is the key word here. So if I understand the logic of your argument, construction and design modifies improvements. So the only exception to the PWA is what in real life turns. So they are capital improvements that's defined as upgrades to the main electrical system, ventilation system, aeration systems, and septage receiving facility. So those are the capital improvements under this particular service contract. What the Special Act says is when VLA, you go do that work, here's what you have to do. Look at Section 6. And Section 6 says you have to go out, get sealed bids, and award it to the lowest bidder. That is consonant with the Prevailing Wage Act. You go out, you get sealed bids, you award it to the lowest bidder. That's what the Prevailing Wage Act is designed for. The Prevailing Wage Act is not designed for is this extremely complicated procurement scheme that the Special Act sets forth, where you get two separate bids, two separate committees, an independent engineer, and then five months of negotiations, which is the Metcalf argument, which is the second argument that we raised, that we're not writing on a blank slate. The SJC has said very clearly when the PWA, Prevailing Wage Act, is incompatible with the procurement scheme of a statute, the Prevailing Wage Act does not apply. When a contract is not awarded on a low bid basis, it does not trigger the same legislative concerns that drive the Prevailing Wage Act. And therefore, those types of contracts are not governed by the Prevailing Wage Act. That's exactly what we have here, is an extremely complicated procurement scheme that's not awarded to the lowest bidder. Yeah, but Metcalf involves Section 58, which involved contracts that were untethered to a specific public works construction project. And there were further limitations. So I'm not sure Metcalf actually was meant to govern the questions before us. I appreciate that Metcalf says that. But then the next paragraph says, more importantly, and then it goes on to explain about how. Yeah, but more importantly, doesn't eliminate the prior paragraph. I guess the broader point, Your Honor, is that there's no way that the Prevailing Wage Act and the procurement scheme here are at odds with each other. They don't work together. They can't work together. And whether there is a- Why can't they? We're back to the district court's ruling of inconsistency, which it doesn't explain. We've asked both of you, what is the inconsistency? Inconsistency is the Prevailing Wage Act is designed to protect the situation where there are sealed bids that's awarded to the lowest bidder. And that's not how this was awarded. That's not how this contract is awarded. This contract had, I think, an 18-month lead time from start to finish, including five months of negotiations. Veolia and the other offeror, who I don't know who it was, were not looking to save pennies by cutting on labor costs. They were trying to get the best bid possible that would fit the extremely complicated requirements of this bid, of this proposal. So are you saying that at the time that you submitted your proposal, you were operating under the assumption that improvements did not garner prevailing wage salaries? I mean, did that factor into the negotiations? The other way around, Your Honor. Improvements, so improvements, capital improvements, those do get prevailing wage under the terms of the Special Act. The other work does not have- I'm saying, were you interpreting the other work at the time that you were negotiating to be that you didn't have to pay prevailing wages? Is that what you're saying? Both the Water Commission and Veolia both were under that impression, because that's what the Special Act says, is the Prevailing Wage Act does not apply to the work that we've helped- There's disagreement, obviously. Otherwise, you wouldn't be here as to what it meant. But I'm just saying that in practical terms, was that your operating understanding during the negotiations? Yes, Your Honor. There's a clause in the contract, the service contract, that says if prevailing wage applies to this work, we'll renegotiate it. So it's explicitly stated. Springfield Water Sewer Commission and Veolia both think that the Prevailing Wage Act doesn't apply based on the language of the Special Act, as interpreted by the agency that's been doing this since 1997. That sounds like an acknowledgment of ambiguity. I'm sorry, Your Honor? Oh, the renegotiation? If the PWA does apply, and if the contract says, well, if somebody determines that, then we renegotiate. It sounds like somebody thought there was a question about whether the PWA applied to this type of work. The clause I was referencing says it's not quite a force majeure clause, but akin to that. Here are the things that would. So it's a guard against unforeseen circumstances, I believe. Counsel, let me ask you a final matter. You used the term that this case involves an extremely complicated scheme, underline and bold that. You also acknowledged, so did Brother Counsel, we're dealing with issues of first impression. And it's definitely clear that there is important interest in state law involved, not only to Springfield, but also to the state. My question is, what's your position if we were to certify these issues to the Massachusetts SJC? And I'll ask the same question from Plaintiff's Counsel, as well. I don't believe we have a position. We don't defer to your eye. No position, Your Honor. OK. Thank you. Thank you, Your Honor. OK. Mr. Coles? Yes. One minute. Use your one minute, and after you use your one minute, you can then respond to this last question I posed. OK, thank you. I just want to take this minute to talk about the term improvement, as it's used in Section 6. As I argue in my brief, unlike construction, there is no definition of improvement, either in the special act that created the Springfield Water and Sewer Commission, or in the prevailing wage law. I would suggest, with respect to improvement, you adopt a dictionary definition of make better. And as case law and decisions have said, that alterations and additions, repair and replacement, do make things better. When they rebuild the bridge, the many bridges that are used at the wastewater facility treatment plant, it makes it better. It makes it operable. I would also suggest that counsel is mixing up the terms around improvement, because what he's referring to is initial capital improvements. We admitted we don't do initial capital improvements. They're a series of very discrete construction things. But that is not the total universe of improvements, either under Section 6 or under the Prevailing Wage Act. OK, and as to the certification question? Yeah, I don't object. I think this court is, you know, obviously, I will defer to your judgment. But we want to get it right. I understand that. Why did you file suit in federal court? Why did I? I did not. I filed in state court. It was removed at the behest of the diversity jurisdiction. OK, well, thank you to both counsel. Thank you. And what we would ask is, in the event we were to certify, we're going to give you until next Friday, simultaneously, to submit any proposed questions that we would certify to the SJC in the event we would do it. So you have about seven, eight working days for that. Please submit those. And thank you very much. That concludes arguments on that.